CITY OF ST. FRANCIS, Appellant, vs. PUBLIC SERVICE COMMISSION, Respondent.

*April 8—May 3, 1955.*

For the appellant there was a brief and oral argument by *William H. Bowman* of Milwaukee.

For the respondent there was a brief by the *Attorney General* and *William E. Torkelson,* chief counsel for the Public Service Commission, and oral argument by *Mr. Torkelson.*

For the town of Lake there was a brief by *Herbert L. Mount* and *Frederick E. Reidenbach,* both of Milwaukee, and oral argument by *Mr. Mount.*

BROADFOOT, J.   On the question of jurisdiction, the commission contends that its determination of the value is not subject to review under the provisions of ch. 227, Stats.  It

contends that it merely made a finding of fact and did not issue any order or directive. The commission contends that a finding of fact is not reviewable and that there is no statutory provision that the action of the commission in finding the value of a public utility under the provisions of sec. 66.03 (4), Stats., is reviewable. Said section reads as follows:

*"Public utilities.* Any public-utility plant, including any dam, power house, power transmission line, and other structures and property operated and used in connection therewith shall belong to the municipality in which the major portion of the patrons of such utility reside. The value of such utility, unless fixed by agreement of all parties interested shall be determined and fixed by the public service commission upon notice to the municipalities interested, in the manner provided by law. The commission shall certify the amount of the compensation to the clerks of each municipality interested and said amount shall be used by the apportionment board or boards in adjusting assets and liabilities."

The circuit court cited sec. 196.41, Stats., which reads as follows:

"Any order or determination of the commission may be reviewed in the manner provided in chapter 227."

The circuit court stated that sec. 66.03 (4), Stats., requires the commission to make a determination. Under sec. 196.41, any determination of the commission is reviewable under ch. 227, Stats.

The commission advances several other arguments in its brief to support its claim that its determination is not reviewable. We have given careful consideration to those arguments and have checked the authorities cited, none of which are directly in point as this entire matter is a matter of first impression in Wisconsin. The learned circuit judge reached the proper conclusion when he stated:

"The determination herein is a 'determination' and a *decision* which directly affects the rights of petitioner, as contemplated in these review statutes, in our opinion. There is no other recourse open to petitioner that we can see and certainly petitioner is entitled to some remedy to judicially ascertain whether its property rights legally or illegally have been fixed."

The method used by the commission in arriving at the figures contained in its determination is shown by the following exhibit:

### Town of Lake Water Utility

### Summary of Net Assets

#### July 25, 1951

| Particulars | Amount |
|---|---:|
| *Net investment in utility plant:* | |
| Construction cost of plant..................... | 1,683,461.34 |
| Less depreciation reserve..................... | 208,442.59 |
| Depreciated cost of plant..................... | 1,475,018.75 |
| Contributions in aid of construction............. | 765,351.72 |
| Net investment in utility plant................. | 709,667.03 |
| *Current assets*................................. | 149,327.82 |
| *Unamortized debt discount and expense*............ | 29,091.18 |
| Total ................................. | 888,086.03 |
| *Deduct liabilities:* | |
| Revenue mortgage bonds, 4%............199,000 | |
| Refunding mortgage bonds, 3½%..........476,000 | |
| Total bonds ............................. | 675,000.00 |
| Current liabilities........................... | 6.816.26 |
| Total liabilities ............................. | 681,816.26 |
| *Net assets*..................................... | 206,269.77 |

The city of St. Francis attacks the method employed by the commission and its final determination of value in only one particular. In 1937 the town of Lake made application to the Federal Emergency Administration of Public Works

for a grant to aid in the construction of a waterworks system, community building, and bridge, including necessary equipment and the acquisition of necessary land therefor. A single grant was made to aid in financing the combined projects, subject to certain conditions which, unfortunately, do not appear in the record. Thereafter grants were received from the Works Progress Administration, some of which funds were used in the construction of the water utility. In addition thereto, patrons of the utility paid in assessments toward the cost of water mains and meters. These assessments were set up on the books as "contributions in aid of construction." The federal grants in aid were analyzed by the commission and a portion thereof was allocated to the water utility, so that the amount thereof reflected in the table reflects only the amount thereof used in financing the waterworks system, so far as the commission was able to determine.

Except for the question of jurisdiction, the sole issue raised is whether the commission acted properly in eliminating the contributions in aid of construction in its determination of the value of the utility under the provisions of sec. 66.03 (4), Stats. The city of St. Francis contends that the government grants in aid were made to the town as a municipality and not to the water utility as a separate entity, and that the utility, so far as ownership is concerned, is no different than any other asset owned by the town. It contends that all assets of the town are to be apportioned and divided.

The city also directs our attention to the provisions of sec. 66.03 (3) (a), Stats., and states that the title to real estate shall not be transferred except by agreement but the value thereof shall be determined in making the adjustment of assets and liabilities. It contends that the breakdown of the grants in aid by the commission shows that land, buildings, and equipment used and useful in the operation of the utility were purchased with the grants in aid, and that the commission, by eliminating the same as contributions in

aid of construction, violated its statutory duty when it refused to include the value of said real estate, buildings, and equipment. So far as we can tell from the record, the grants in aid, together with funds raised by the town, were mingled and purchases and construction costs were paid out of the common fund. The value of these assets is reflected in the summary given above.

The city also contends that customers' contributions in aid of construction are divisible. It is contended that these contributions were made by residents of the district later incorporated as the city, as well as by residents of the area remaining in the town on July 25, 1951. The city cites and relies upon quotations from *Cassian v. Nokomis,* 254 Wis. 94, 35 N. W. (2d) 408; *Bayside v. Milwaukee,* 267 Wis. 448, 66 N. W. (2d) 129; *Milton Junction v. Milton,* 263 Wis. 367, 57 N. W. (2d) 186; *Roberts v. Madison,* 250 Wis. 317, 27 N. W. (2d) 233; and *Wisconsin Hydro-Electric Co. v. Railroad Comm.* 208 Wis. 348, 236 N. W. 663, 243 N. W. 322. These cases are all distinguishable upon the facts. The *Wisconsin Hydro-Electric Case* was decided under the 1929 statutes that were repealed in 1931. It was a case involving the issuance of securities and what was there stated was dictum, in view of the fact that the record was incomplete and the case was returned to the railroad commission for further hearing. As we stated above, this is a matter of first impression in Wisconsin. We must, therefore, look to the statutes as our guide.

The legislature has merely provided that the commission determine and fix the value of the utility. It prescribed no formula and set up no standard beyond that. "Value" is a word with many definitions. In negotiable instruments "value" is any consideration sufficient to support a simple contract. It has a different meaning in matters of taxation.

"The 'value' of a thing, generally speaking, is what it will sell for, or what it may be purchased for." *Hoffman v. Labutzke,* 233 Wis. 365, 378, 289 N. W. 652.

"It is considered that this case is ruled by *Burroughs v. Joint School Dist.* 155 Wis. 426, 144 N. W. 977. It was there held that if when the term 'value' is applied to a particular contract, or conditions growing out of it, it leads to results clearly not contemplated by the contract read as a whole, and it is susceptible of another meaning which harmonizes with all the provisions of the contract, such other meaning should be given to it." *Kuenzi v. Radloff,* 253 Wis. 575, 582, 34 N. W. (2d) 798.

The determination of the value of a municipal water utility presents special problems. These utilities are under the constant supervision of the Public Service Commission. They must have a permit from the commission to start in business; to abandon operations; to reduce or expand services; or to establish or change rates. Sec. 66.07, Stats., provides that such utilities cannot be leased or sold except with the consent of the commission and at a price and terms to be fixed by the commission. In determining the value of such a utility the commission must see that the rights of patrons and investors, as well as the rights of the utility, are protected. Thus the meaning of "value" depends on the purpose for which a valuation is being made, and generally that value is based upon the amount a utility will be allowed to earn in order that all interested parties may be protected. Most questions of value of utilities arise in connection with rate making, which is a species of price fixing. Price fixing may diminish the value of the utility which is regulated but that is no obstacle to the validity of the power of the commission to establish rates. Rates do not depend upon value, but the value of the utility depends on earnings under permitted rates.

The legislature has seen fit to endow the commission with extraordinary power. This is because the members of the commission are experts in the field of utility regulation or they employ experts with particular skills in that field. The legislature has directed the Public Service Commission to set up a uniform system of accounting for utilities. The system set up by the commission by virtue of this direction requires that contributions in aid of construction shall be carried in a separate account upon the books of the utility. The chief of the accounts and finance department of the commission testified at the hearing as follows:

"The uniform system of accounts issued by this commission provides that all contributions in aid of construction whether received from customers or from governmental authority shall be credited to the contributions in aid of construction account. Currently and for some time it has been standard or usual procedure in rate cases coming before the commission to deduct the contribution account in the determination of a rate base. It has also been customary to deduct the contributions from the property investment in determining the amount of securities which a utility may issue. It has likewise been customary to deduct the contribution account in determining the price at which utility property may be transferred from one owner to another, and unless the contributions have been refunded the new purchaser has been required to set up the amount of the contributions."

In its determination the commission stated:

"The commission has consistently followed the practice, in its rate-making functions, of deducting contributions before determining the rate of return due the municipality. In other words, the contributions or donations were made without hope or intent of receiving a return thereon or any reward other than the obtaining of water service at a reduced price for the customers. The donations were made for the benefit of the consumers of both the town and those now residing in the city; and equity would seem to indicate that the city should not now be heard to claim that they should receive compensation for a portion of the water utility which was

never paid for by them either directly or indirectly. Any different consideration of these contributions for the purpose of determining the compensation to be paid to the city of St. Francis would have the concomitant effect of resulting in an increase in the rates for service to the water consumers in that city inasmuch as the town of Lake would then be justified in requesting an increase in rates to provide a return on the increased equity paid for by that town. Without an increase in rates it would be tantamount to receiving double compensation: First, by the city receiving payment for the contribution; and, second, by the consumers, residing in the city, receiving rates predicated on no return for the capital represented by such donation. We cannot bring ourselves to the conclusion that either equity or the law can justify such a procedure."

This practice has been adhered to for many years. As stated by the learned circuit judge, this rule seems to be both logical and inevitable. If the commission had not deducted the contributions in aid of construction, the town of Lake would be required to pay to the city of St. Francis its *pro rata* share of the contributions, none of which represent any investment by the water utility. This additional payment would require the town to borrow funds or to obtain an increase in its rates to its patrons. Probably both results would follow. If all water rates were increased there would be discrimination against water users outside of the city of St. Francis. If a new rate were to be applied to patrons in the city of St. Francis this would result in many inequities and administrative problems that would be almost insurmountable. The conditions upon which the grants were made were not included in the record. It is clear, however, that they were for the purpose of financing the construction of a waterworks system. We cannot conceive that the grant would have been given if at some later date the utility was to be sold and the money used for other municipal purposes, or that any portion thereof should be so diverted. These grants enabled the giving of water service to the people in the area which

the town was unable to provide and because of which the patrons have enjoyed low rates. The commission followed a consistent practice used in the case of rate making, financing, and sale of utilities. The division of property of municipalities is founded upon an equitable doctrine resting upon the relative rights of the municipalities, the character of the property to be divided, and legislative regulation upon the subject.

The determination by the Public Service Commission, in view of the character of the property involved and in view of its rules that have been consistently followed, is the only fair and equitable determination that it could have made under the language and intent of the statute.

*By the Court.*—Judgment affirmed.