Sidney GOLDBERG, Relator-Appellant,

v.

The CITY OF MILWAUKEE BOARD OF ZONING APPEALS, Defendant-Respondent.

Court of Appeals

*No. 82–2366. Submitted on briefs August 16, 1983.—Decided October 10, 1983.*

(Also reported in 340 N.W.2d 558.)

For the relator-appellant the cause was submitted on the briefs of *Deutch, Hansher & Grodsky, S.C.,* with *Harry A. Stein* and *Alan H. Deutch* of counsel, of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *James B. Brennan,* city attorney, with *Beverly A. Temple,* assistant city attorney of counsel, of Milwaukee.

Before Decker, Moser and Brown, JJ.

DECKER, J. Sidney Goldberg (Goldberg) appeals from an order denying his application to the Milwaukee Board of Zoning Appeals (board) for a permanent variance. He contends that the board acted improperly in revising, without giving notice or stating reasons, its original determination, and further erred in creating a variance personal to the sellers, the Piepers. We agree that the revision was in excess of the board's power. We hold that the revised determination was void and we

therefore reverse the order of the circuit court and remand to the trial court directing entry of judgment in accordance with this opinion.

The property in question, located at 2862 N. Prospect Avenue, had been converted from a four-family to a six-family dwelling sometime prior to the 1970's.

In October, 1974, Roland and Helen Pieper submitted an offer to purchase and filed an application for an occupancy certificate for a six-family apartment building. The application was denied by the building inspector on October 28, 1974, because the lot was too small. On November 5, 1974, the Piepers filed a notice of appeal to the board. A hearing was held on November 21, 1974. The board issued a decision dated December 2, 1974, granting a variance for a permit to occupy the building as a six-family dwelling. On December 11, the Piepers, in accord with the terms of the variance, recorded an affidavit with the register of deeds reflecting the grant of the variance. On December 13, 1974, however, the board revised its decision, apparently without a further hearing and without prior notice to the Piepers, and added the following condition: "That this variance is granted to Roland and Helen Pieper personally." It is undisputed on appeal that the Piepers did not receive notice of this change until after they had completed the purchase of the building. When the building purchase was completed, the Piepers had notice of only the original variance and had complied with its affidavit provision. They did not appeal the revised determination after they learned of it.

On July 5, 1979, Goldberg submitted an offer to purchase the property from Helen Pieper, now a widow. That offer, which was apparently accepted, provided for transfer by land contract, which contained various options in the event a six-family variance was not accepted. On July 17, 1980, an application for a six-family occupancy certificate was made by Shafton Properties. On

July 24, 1980, the district inspector noted that, because the variance was personal to the Piepers, the new owners must apply for a hearing before the board.

On August 19, 1980, Goldberg filed a notice of appeal requesting a permanent variance for six-family use or, in the alternative, for a six-family owner-occupied variance. He alleged the "same reasons and grounds as was previously requested" by the Piepers.

After a hearing, the board entered an order denying the variance. Goldberg brought a writ of certiorari to have the circuit court review the board's decision. The court affirmed the board's decision. Goldberg appeals.

Although Goldberg raises a variety of issues on appeal, we need only address whether the act of the board was arbitrary and whether variances run with the land.

This case is before the trial court and now this court on certiorari, and thus, review is limited to: (1) whether the board kept within its jurisdiction; (2) whether it proceeded on correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. *Snyder v. Waukesha County Zoning Board of Adjustment,* 74 Wis. 2d 468, 475, 247 N.W.2d 98, 102 (1976).

The trial court determined that the board's action was not arbitrary because:

Mr. Goldberg is not asking for the same treatment as was given the Piepers. Whereas they were granted a variance limited to themselves personally, while they occupied the premises—a condition which allowed the Board to retain future control if changes in the neighborhood required strict conformity with the ordinance—Mr. Goldberg is seeking a permanent variance, not personal as to him.

While this may be an accurate statement if one compares Goldberg's application with the December 13, 1974

variance, it is not accurate if the original variance of December 2, 1974 is used. The real issue before us, then, is the validity of the revised variance of December 13, 1974.

Section 62.23 (7) (e), Stats., governs zoning boards of appeals. Subsection 6 states:

6. The board of appeals shall fix a reasonable time for the hearing of the appeal or other matter referred to it, and give public notice thereof, as well as due notice to the parties in interest, and decide the same within a reasonable time. Upon the hearing any party may appear in person or by agent or by attorney.

While notice was given and a hearing was had concerning the original variance granted, there is nothing in the record to indicate that the revised variance resulted from an additional hearing, nor is there any indication that notice was given.

We are unaware of any Wisconsin authority to support or reject the board's revision. Although there is some split of authority on a board's power to reopen or reconsider,[1] our research persuades us that the better rule is that a zoning board acts in excess of its power in reopening a proceeding which has once been terminated. *See People ex rel. Swedish Hospital v. Leo,* 198 N.Y.S. 397, 399 (N.Y. 1923) ; *see also Morton v. Mayor and Council of Clark,* 245 A.2d 377, 382–84 (N.J. Super. Ct. 1968) [and cases cited therein]. Possible exceptions to this rule, such as public necessity or other good cause, are not evident from the record and are, therefore, inapplicable here. *See Nuckles v. Allen,* 156 S.E.2d 633, 637 (S.C. 1967).

We are persuaded and guided by a statement by the Superior Court of New Jersey in *Morton, supra,* at 384:

[1] *See* 8A E. McQuillin, The Law of Municipal Corporations § 25.274 (3rd ed. 1976).

[V]iewing the board of appeals as a *quasi*-judicial tribunal, the general rule is that *such a board is not vested with the power to reopen and rehear a proceeding which has once been terminated,* at least in the absence of mistake in the prior proceedings. Otherwise there would be no finality to the proceeding; the result would be subject to change at the whim of members, or due to influence exerted upon them or other undesirable elements tending to uncertainty and impermanence.

[Emphasis in original.] *Citing Miles v. McKinney,* 199 A. 540, 546 (Md. Ct. App. 1938); *see also* 3 R. Anderson, American Law of Zoning § 16.50 (1968).

We draw further guidance from *State ex rel. Cities Service Oil Co. v. Board of Appeals,* 21 Wis. 2d 516, 124 N.W.2d 809 (1963). Although the issue there concerned alleged defects in notice of board hearings concerning building permits, the supreme court distinguished building permit hearings from variance hearings and discussed the significance of variances generally:

We consider the situation with respect to a claimed defect in the published notice of a hearing to consider a variance to be entirely different than that of a hearing to consider an appeal by a nearby property owner to revoke a building permit which he contends violated a zoning ordinance. In the former situation adequate public notice is most essential in order to give affected property owners a chance to protest against the proposed variance. If the variance is granted and the published notice is defective, nearby property owners adversely affected, who have been seriously prejudiced thereby, ought to be entitled to assert that the board's action in granting the variance is illegal and void. *Id.* at 534–35, 124 N.W.2d at 819.

While this language speaks about the notice rights of adjoining landowners when a variance is granted, we believe it is equally pertinent to the notice rights of the landowners when a variance is modified; the revision

was beyond the powers of the board as an arbitrary act and is illegal and void.

We reject the board's argument that the revision is unreviewable because the Pieper's never appealed within the time period set forth in sec. 62.23 (7) (e) 10, Stats. Here, the board acted in a quasi-judicial capacity. A judgment or order which is void may be expunged by a court at any time. Such right to expunge a void order or judgment is not limited by statutory requirements for appeals. *See Kohler Co. v. DILHR,* 81 Wis. 2d 11, 25, 259 N.W.2d 695, 701 (1977).

Having voided the revised variance which made the grant personal to the Piepers, we must now determine whether the December 2, 1974, variance accrues to Goldberg as a subsequent landowner.[2] Again, Wisconsin law is of little avail.

The overwhelming bulk of authority on variances makes it clear that variances run with the land: "A grant of a variance for property is not a personal license to the then owner, but is a right that ordinarily runs with the land, so that one purchasing property is generally entitled to make use of a variance granted to his predecessor in title." [Footnote omitted.] 1A C. Antieau, Municipal Corporation Law § 7.108 (1983). *See also State ex rel. Parker v. Konopka,* 200 N.E.2d 695, 696 (Ohio Ct. App. 1963) [and cases cited therein]; 3 R. Anderson, American Law of Zoning § 14.61 (1968); 8 E. McQuillin, The Law of Municipal Corporations § 25.-163 [and cases cited therein]; 3 A. Rathkopf, The Law of Zoning and Planning § 38.06 (4th ed. 1983).[3]

---

[2] While the record is vague concerning the status of the transaction between Goldberg and Helen Pieper, we will address the issue as though the transaction were complete.

[3] Because we hold that the revised variance of December 13 was void, we need not and do not address the questions of the validity

We further note that various authorities speak of existing variances as endowing a subsequent purchaser with a vested right to the continuation of the variance. *See, e.g., Nuckles, supra; McQuillin, supra.*[4]

Here, Goldberg petitioned for a permanent variance for six-family occupancy and alternatively petitioned for the same conditions if owner-occupied. Goldberg's alternative position asks for no more than was granted to the Piepers in the December 2, 1974 order.[5] We conclude that the board acted arbitrarily in revising its original determination without cause or notice so as to create a personal variance and further erred in considering Goldberg's petition as anything other than a request for a continuation of a variance that runs with the land. While variances are not irrevocable,[6] the board here treated

of personal variances generally or the discretionary powers of the board under sec. 62.23 (7) (e) 1, Stats., to fashion exceptions to zoning ordinances.

[4] We note, however, that our supreme court, while addressing the issue of zoning ordinances rather than variances, stated that "[p]roperty holders have a great interest in zoning, but . . . they acquire no vested rights against rezoning because of their reliance upon the original zoning. Indeed, if this were not so no changes in zoning or in comprehensive zoning plans could ever be made to adapt land use realistically to changing times and environment." *Buhler v. Racine County,* 33 Wis. 2d 137, 148, 146 N.W.2d 403, 408 (1966).

[5] Although the December 2, 1974 order does not explicitly require that the premises be owner occupied, the Pieper's Application for Occupancy Certificate (a copy of which is part of the record on appeal) stated that the kind of occupancy sought was "To be owner occupied . . . 6 Fam. Apt. Bldg." We conclude that Goldberg's alternative position, therefore, is identical to that relief sought and obtained by the Piepers.

[6] "Although local governments should be able to revoke variances when necessary to protect the public health, safety or general welfare, courts will judicially void revocation of variances when they conclude the action of the local authorities was

Goldberg's petition as one for a new variance because all concerned erroneously relied upon the validity of the Piepers' revised variance. Because variances run with the land, Goldberg is entitled to the original variance granted to the Piepers.

We therefore reverse the order of the trial court and remand with directions to enter judgment granting to Goldberg a variance in accord with the original variance granted to the Piepers on December 2, 1974.

*By the Court.*—Order reversed and cause remanded with directions.

unreasonable, that is, not reasonably necessary for the protection of the community health, safety, morals or general welfare." 1A C. Antieau, Municipal Corporation Law § 7.128 (1983) [Footnote omitted.]