Richard SCHOEN, Petitioner-Appellant,

v.

BOARD OF FIRE AND POLICE COMMISSIONERS OF THE
CITY OF MILWAUKEE, Respondent-Respondent.

Court of Appeals

*No. 2014AP2821. Submitted on briefs August 3, 2015.
—Decided November 24, 2015.*

2015 WI App 95

(Also reported in 873 N.W.2d 232.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Jonathan Cermele* and *Brendan P. Matthews* of *Cermele & Matthews, S.C.* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Grant F. Langley*, city attorney by *Maurita Houren*, assistant city attorney of Milwaukee.

Before Kessler and Brennan, JJ., and Daniel L. LaRocque, Reserve Judge.

¶ 1. KESSLER, J. Richard Schoen appeals an order of the circuit court affirming the Board of Fire and Police Commissioners' (the Board) decision to discharge Schoen. The Board first found that Schoen acted with excessive force, in violation of Milwaukee Police Department Rules and Procedures.[1] In determining the penalty, the Board, by an oral decision, initially announced a 60–day suspension for the violation. The Board reconsidered that decision prior to issuing its written decision, which ultimately imposed discharge as the penalty. The circuit court, in Schoen's *certiorari* petition and appeal,[2] upheld the Board's decision to discharge Schoen. Schoen appeals.

¶ 2. The sole issue here is whether the Board acted within its authority when, based on the Board's conclusion that its earlier disciplinary decision was based on a mistake of law, it changed its oral decision to suspend Schoen and discharged him instead. Schoen argues that the Board had no authority to reconsider its decision, regardless of the reason. We disagree and affirm.

## BACKGROUND

¶ 3. On May 1, 2012, Milwaukee Police Chief Edward Flynn discharged Schoen for use of excessive force. The discharge stemmed from an incident on

---

[1] This finding is not appealed.

[2] The circuit court consolidated the appeal and the *certiorari* petition, treating the entire review as a *certiorari* review because the principal issue was whether the Board acted on a correct theory of law, which can only be reviewed by *certiorari*. *See State ex rel. Enk v. Mentkowski*, 76 Wis. 2d 565, 573–75, 252 N.W.2d 28 (1977).

September 22, 2011, after Schoen arrested J.T. Schoen stopped J.T.'s car and ultimately arrested J.T. for disorderly conduct. A squad car camera showed that upon arrival at the District Seven police station, Schoen removed J.T., who was handcuffed, from the backseat of the squad car by grabbing her shirt near her abdomen. Schoen punched J.T.'s head multiple times with one hand, while still clutching her shirt with the other. Schoen then grabbed J.T.'s hair, threw her to the ground, got on top of her and "delivered a knee strike." J.T. was escorted into the police station by another officer.

¶ 4. Schoen appealed his discharge to the Board, pursuant to WIS. STAT. § 62.50(13) (2013–14).[3] A two-phase hearing, as required by statute and Fire and Police Commission Rule XVI, Sections 12–14, was held on November 28, 2012. In the first phase, the Board focused on the first five "just cause" factors, outlined by § 62.50(17)(b)[4] and Section 12 of the Commission Rules, to determine *whether* discipline should be im-

---

[3] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[4] WISCONSIN STAT. § 62.50(17)(b) provides:

No police officer may be suspended, reduced in rank, suspended and reduced in rank, or discharged by the board under sub. (11), (13) or (19), or under par. (a), based on charges filed by the board, members of the board, an aggrieved person or the chief under sub. (11), (13) or (19), or under par. (a), unless the board determines whether there is just cause, as described in this paragraph, to sustain the charges. In making its determination, the board shall apply the following standards, to the extent applicable:

1. Whether the subordinate could reasonably be expected to have had knowledge of the probable consequences of the alleged conduct.

2. Whether the rule or order that the subordinate allegedly violated is reasonable.

posed.[5] During the Phase One hearing, both parties submitted evidence, examined and cross-examined witnesses and made closing arguments. The Board then went into a closed session to deliberate.

¶ 5. The Board reconvened on December 3, 2012, and announced in an open session that the charge against Schoen was sustained. The Board immediately proceeded to Phase Two to determine the appropriate discipline. The parties presented evidence primarily related to the last two "just cause" factors in WIS. STAT. § 62.50(17)(b) and Commission Rule XVI, Section 12. At the conclusion of evidence, the Board again went into a closed session to deliberate. In an open session later that day, the Board announced that it decided the penalty for Schoen's use of excessive force would be a 60–day suspension:

> [HEARING EXAMINER JOHN] CARTER: Commissioners, this is a Phase II and 62.50(17)(b) 6 and 7 are the just cause standards.

3. Whether the chief, before filing the charge against the subordinate, made a reasonable effort to discover whether the subordinate did in fact violate a rule or order.

4. Whether the effort described under subd. 3. was fair and objective.

5. Whether the chief discovered substantial evidence that the subordinate violated the rule or order as described in the charges filed against the subordinate.

6. Whether the chief is applying the rule or order fairly and without discrimination against the subordinate.

7. Whether the proposed discipline reasonably relates to the seriousness of the alleged violation and to the subordinate's record of service with the chief's department.

[5] Fire and Police Commission Rule XVI, Section 12, also provides the seven "just cause" factors of WIS. STAT. § 62.50(17)(b) and essentially mirrors the statute.

Has the commission reached a decision?

COMMISSIONER COX: Yes, the commission has.

MR. CARTER: With respect [to] Just Cause Standard 6 which indicates that the rule fairly and without discrimination applied to the officer, has the commission determined that that has been met?

COMMISSIONER COX: That unanimously the commission believes that standard has been met.

MR. CARTER: Thank you. And with respect to Just Cause Standard 7, it is a two-to-one decision and the majority of the commission has determined that the chief's determination of a dismissal is not sustained and . . . the appropriate penalty is a 60–day suspension and that vote was two-to-one.

COMMISSIONER COX: That is correct.

¶ 6. On December 7, 2012, prior to issuing its written decision, the Board publically announced that it would reconvene on December 11, 2012, for further proceedings regarding Schoen's disciplinary appeal. During a phone conference between Schoen's counsel, the Milwaukee City Attorney and the Hearing Examiner, Schoen's counsel objected to the December 11 session.

¶ 7. When the Board reconvened on December 11, Commissioner Michael O'Hear, a professor of law at Marquette University Law School, moved to reconsider the Board's penalty decision. O'Hear explained that he had applied an incorrect legal standard in reaching the earlier disciplinary decision. O'Hear explained that he failed to fully consider Rule XVI, Section 14 because only a portion of the text of that Rule had been provided during the initial delibera-

tions.[6] Essentially, after review of both the criteria for *whether* to discipline (focusing on reasonableness of the conduct)[7] and *what* discipline to impose (focusing on "the good of the service" measured by "the impact of the misconduct on the complainant, department and community"),[8] O'Hear realized that he had not properly considered "the good of the service."

¶ 8. O'Hear's full explanation is set out here:

> In the process of working with my colleagues on the commission to prepare a written decision in this matter, it became apparent to me that I had applied an incorrect legal standard in my decision in the first instance. My decision initially was based solely on the seven just cause standards set forth in Section 12 of the Fire and Police Commission rules dealing with trial procedures and it was based on a view that the chief bore a burden of proof with respect to all matters in both Phase I and Phase II. This viewpoint was based on, as I have indicated, Section 12 of our Fire and Police Commission rules.

---

[6] Fire and Police Commission Rule XVI, Section 14, provides:

TRIAL PROCEDURE-COMPLAINT SUSTAINED. If the Board sustains a finding of one or more rule violations, evidence may then be received regarding the member's character, work record, and the impact of the misconduct on the complainant, department, and community. The Board may deliberate in closed session in order to determine whether the good of the service requires that the appellant be:

(a) permanently discharged; or

(b) suspended without pay for a period to be determined by the Board; or

(c) demoted to a lower rank; or

(d) participate in policy training.

[7] *See* Wis. Stat. § 62.50(17)(b)1.-5.

[8] *See* Wis. Stat. §§ 62.50(17)(a) and 62.50(17)(b)6.-7.

It has since come to my attention that there are some relevant considerations also set forth in Section 14 of our trial procedures. We were not provided prior to our deliberations in this matter with the full text of Rule 14 — or Section 14. We were given a truncated version of that section and I have since carefully read and reviewed the full text of Section 14 and also Section 12 and the relevant statutes and based on a full review of Section 14, have determined that my understanding of governing legal standards was an incorrect one, incorrect in a number of ways, but two in particular I would highlight.

One relates to the burden of proof. If you read Section 14 in its entirety and you put it next to Section 12, it is very striking that Section 14 says nothing about a burden of proof to be imposed on the chief at the Phase II determination of what discipline is to be imposed on the officer.

If you then review Section 12 carefully, you realize that the burden of proof imposed in Section 12 is only with respect to sustaining the charge. That is to say, the Phase I determination of whether there was a rule violation.

It is now my view that at Phase II, after a rule violation has been established, that the chief does not bear a burden of proof and in fact, that a measure of deference to the chief's decision is permissible and perhaps even required with respect to the disciplinary choice only at Phase II.

So the burden of proof is one way in which my view of the governing law has changed.

The second way is based on the language that was omitted from the version of Section 14 that was given to us prior to our deliberations. The truncated version of Section 14 is contained in Exhibit 3 at the initial trial and the language that was omitted specifies that our decision must be to determine what discipline —

287

let me get the right language here — is for the good of the service. We have to determine whether the good of the service requires one of a number of disciplinary choices. This is a different and more focused inquiry tha[n] what is set forth in Section 12 and the seven just cause standards which speaks only of the reasonableness of the decision.

So my initial decision was based on an open-ended reasonableness test and instead, in Section 14, I see that the inquiry should instead be focused on what is in — what is for the good of the service.

So in light of those two misunderstandings about the nature of the governing legal standards, I would now request that we move into a closed session to conduct further deliberations that will be informed by a proper understanding of the governing legal standards.

The Board voted to reconsider its decision in a closed session. Following the closed session, the Board publically announced its decision to discharge Schoen. Schoen's counsel was present for the entirety of the hearing and objected to the Board reconvening and reconsidering its earlier decision.

¶ 9. In a written decision, the Board detailed its findings of fact, its analysis of each just cause factor, and the statutes implicated. In discussing its reasoning for Schoen's discharge, the Board concluded that Rule XVI, Section 14, and WIS. STAT. § 62.50(17)(a),[9]

---

[9] WISCONSIN STAT. § 62.50(17)(a) provides:

DECISION, STANDARD TO APPLY. (a) Within 3 days after hearing the matter the board, or a 3–member panel of the board, shall, by a majority vote of its members and subject to par. (b), determine whether by a preponderance of the evidence the charges are sustained. If the board or panel determines that the charges are sustained, the board shall at once determine whether the good of the service requires that the accused be permanently discharged

require the Board to determine what discipline is necessary for the "good of the service." In making that decision, some deference is given to the Police Chief's decision, as he is obliged to enforce these Department Rules, and is required to apply the same criteria in imposing discipline that the Board is required to consider. The Board's written decision acknowledged Schoen's positive contributions to the police department, but noted that excessive force "potentially jeopardizes life and limb," causes "severe emotional trauma," and "has an important negative impact on the reputation of the entire Department." The Board gave some deference to the Police Chief's view that "the violation [was] so serious as to outweigh the acknowledged positive aspects of Schoen's record." The Board also noted that Schoen lacked credibility, as he failed to accept responsibility for his actions and insisted that he acted reasonably.

## Review by the Circuit Court.

¶ 10. In Schoen's *certiorari* proceeding, he argued that: the Board acted beyond its jurisdiction when it reconsidered its decision to suspend him and that the Board was politically pressured into changing its decision, thus violating his due process rights.[10]

---

or be suspended without pay for a period not exceeding 60 days or reduced in rank. If the charges are not sustained the accused shall be immediately reinstated in his or her former position, without prejudice. The decision and findings of the board, or panel, shall be in writing and shall be filed, together with a transcript of the evidence, with the secretary of the board.

[10] Schoen filed a motion to permit discovery in his *certiorari* action, contending that the Board was improperly influenced by the Office of the Mayor of the City of Milwaukee when

¶ 11. The circuit court concluded that the Board had inherent authority to reconsider its decision to suspend Schoen, which was based on an error of law. Therefore, the Board did not act beyond its jurisdiction. After allowing Schoen limited discovery to attempt to substantiate his claim of political pressure on the Board, the circuit court concluded that Schoen's due process rights were not violated because the Board reconsidered in order to correct an error of law—not because of political pressure.

¶ 12. This appeal involves only Schoen's claim that the Board had no power to change its oral disciplinary decision.

## DISCUSSION

¶ 13. Schoen argues: (1) that the Board did not have the inherent authority to reconsider its oral decision to suspend Schoen; (2) the Board exceeded its jurisdiction when it reconsidered its decision based upon an incorrect theory of law; and (3) Schoen's procedural due process rights were violated because he did not receive adequate notice that the Board would reconvene on December 11, 2012.

**Standard of Review.**

¶ 14. On *certiorari,* we review the decision of the Board, not the decision of the circuit court. *See State ex rel. Sprewell v. McCaughtry*, 226 Wis. 2d 389, 393, 595

---

it changed its suspension decision. Ultimately, the circuit court granted the motion. A deposition of Director Michael Tobin revealed that there was no "smoking gun" proving any sort of improper influence by the Mayor's office. This issue is not before us on appeal and we do not discuss this issue further.

N.W.2d 39 (Ct. App. 1999). *Certiorari* review involves a question of law, which we review *de novo. See id. Certiorari* review of a decision by an administrative body is limited to: (1) whether the body kept within its jurisdiction; (2) whether it proceeded on the correct theory of law; (3) " 'whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment[;] and (4) whether the evidence was such that it might reasonably make the order or determination in question.' " *See State ex rel. Gudlin v. Civil Serv. Comm'n of the City of West Allis*, 27 Wis. 2d 77, 82, 133 N.W.2d 799 (1965) (citation omitted). We review the extent of the Board's authority under the statutory scheme *de novo. See Osterhues v. Board of Adjustment for Washburn Cty.*, 2005 WI 92, ¶ 12, 282 Wis. 2d 228, 698 N.W.2d 701.

## I. A Quasi-judicial Body has the Inherent Authority to Reconsider a Decision Based on an Error of Law.

¶ 15. Schoen argues, essentially, that the Board has no power to reconsider *any* decision because Wis. Stat. § 62.50 does not explicitly include the power to reconsider a prior decision, although that power is given by statute to other administrative agencies.

¶ 16. In the statutory scheme for making disciplinary decisions, the legislature has specifically assigned how to make those decisions to the Police Chief and to the Board in Wis. Stat. § 62.50(17).

¶ 17. It is undisputed that there is no specific reference to reconsideration in Wis. Stat. § 62.50. Correcting a mistake of law is neither specifically authorized nor specifically prohibited, but compliance with

the specific standards imposed on the Board by statute is certainly expected by the legislature.

¶ 18. WISCONSIN STAT. § 62.50(17)(b) charges the Board with the responsibility of making a "just cause" determination of grounds for discipline based on consideration of seven specific factors, four of which involve the Board deciding whether the Police Chief's conclusions were "reasonable." *See id* . If the Board finds just cause for discipline, WIS. STAT. § 62.50(17)(a) requires the Board to decide "whether the good of the service requires that the accused be permanently discharged or be suspended without pay for a period not exceeding 60 days or reduced in rank." *See id* . The statutes do not require the Board to consider whether the discipline the Police Chief imposed was "reasonable." Rather, the statutes require the Board to decide what discipline "the good of the service" requires. As O'Hear explained, it was his erroneous failure to consider the statutory "the good of the service" requirement, which led to the Board's error of law.

¶ 19. The authority to reconsider a decision *based on an error* is implicit in such grant of authority to a quasi-judicial body. *See Goldberg v. City Milwaukee Bd. of Zoning Appeals*, 115 Wis. 2d 517, 522, 340 N.W.2d 558 (Ct. App. 1983) (" '[V]iewing the board of appeals as a quasi-judicial tribunal, the general rule is that such a board is not vested with the power to reopen and rehear a proceeding which has once been terminated, at least *in the absence of mistake in the prior proceedings.*' ") (citation omitted; some emphasis omitted; emphasis added; brackets in *Goldberg*); *State v. Cummings*, 199 Wis. 2d 721, 736, 546 N.W.2d 406 (1996) ("A grant of jurisdiction by its very nature includes those powers necessary to fulfill the jurisdictional mandate."). A quasi-judicial body is defined as

"having a partly judicial character by possession of the right to hold hearings on and conduct investigations into disputed claims and alleged infractions of rules and regulations and to make decisions in the general manner of courts."[11] We conclude that the Board is a quasi-judicial body and was functioning as such when it held these hearings into alleged infractions of the rules and regulations of the Milwaukee Police Department.

¶ 20. Our conclusion that the Board, a quasi-judicial body, had the inherent authority to reconsider its decision is supported by long-standing Wisconsin precedent. It is a fundamental and basic principle of administrative agency law that " 'an administrative agency has the power to reconsider its own decisions since the power to decide carries with it the power to reconsider.' " *City of Oak Creek v. PSC*, 2006 WI App 83, ¶ 27, 292 Wis. 2d 119, 716 N.W.2d 152 (citation omitted). Wisconsin has long acknowledged this concept, recognizing numerous times the authority of administrative agencies to reopen, review and modify decisions. *See Claflin v. DNR*, 58 Wis. 2d 182, 206 N.W.2d 392 (1973) (recognizing the DNR's authority to hold a reconsideration hearing); *State Pub. Intervenor v. DNR*, 177 Wis. 2d 666, 675–76, 503 N.W.2d 305 (Ct. App. 1993), *rev'd on other grounds by* 184 Wis. 2d 407, 515 N.W.2d 897 (1994) (recognizing that "an administrative agency has the power to reconsider its own decisions"); *Goldberg*, 115 Wis. 2d at 522 (permitting limited reconsideration ensures decisions are not based on mistake); *City of Oak Creek*, 292 Wis. 2d 119,

[11] *See* http://www.merriam-webster.com/dictionary/quasi-judicial (last visited Sept. 24, 2015).

¶ 28 (recognizing the Public Service Commission's "power to rescind, change, or amend its previous decisions"). Indeed, the Wisconsin Supreme Court explicitly reaffirmed this principal in *Lindas v. Cady*, 183 Wis. 2d 547, 515 N.W.2d 458 (1994), when it said:

> The other cases Lindas cites, *Duel* [*v. State Farm Mutual Automobile Insurance Co.*, 240 Wis. 161, 1 N.W.2d 887 (1942)], [*State ex rel.*] *Schleck* [*v. Zoning Board of Appeals*, 254 Wis. 42, 35 N.W.2d 312 (1948)], *Fond du Lac* [*v. DNR*, 45 Wis. 2d 620, 173 N.W.2d 605 (1970)], and *Davis* [*v. Psychology Examining Board*, 146 Wis. 2d 595, 431 N.W.2d 730 (Ct. App. 1988)], all deal with the ability of agencies to reconsider their own unreviewed determinations. In holding that agencies are not precluded from doing so, the cases all reflect the holding in *Duel* which stated that, "[t]he extent of the power of an administrative body or agency to reconsider its own findings or orders has nothing to do with res judicata; the latter doctrine applies solely to courts."

*Lindas*, 183 Wis. 2d at 564–65 (citation omitted; final set of brackets in *Lindas*).

¶ 21. Schoen contends that the phrase "at once" in Wis. Stat. § 62.50(17)(a)[12] means that the Board is bound by its oral decision as soon as it is announced. This ignores the delegated rule-making authority under Wis. Stat. § 62.50(3), and Commission Rule XVI, adopted by the Board. Commission Rule XVI, Section 10, titled, "Trial Before The Board," describes that the Board's quasi-judicial role, much like a court, is to both

---

[12] Wisconsin Stat. § 62.50(17)(a), as relevant, states: "If the board or panel determines that the charges are sustained, the board shall *at once* determine whether the good of the service requires that the accused be permanently discharged or be suspended without pay for a period not exceeding 60 days or reduced in rank." (Emphasis added.)

find facts and impose discipline. Where the Board functions as a quasi-judicial body, as it did here, it would be unreasonable to conclude that the Board is powerless to correct an error of its own making when it realizes it has misapplied the very law the legislature has established.

██

¶ 22. Here, a reading of Wɪs. Sᴛᴀᴛ. § 62.50 as urged by Schoen would require us to uphold a decision based on a mistake of law—a mistake the Board itself acknowledged and corrected. An administrative agency may not disregard the legal standards that govern the performance of its duties. *Rickaby v. DHSS*, 98 Wis. 2d 456, 461–62, 297 N.W.2d 36 (Ct. App. 1980). The Board was required, both by Rule XVI and Wɪs. Sᴛᴀᴛ. § 62.50(17)(a), to select a specific discipline based on the "good of the service." O'Hear acknowledged that he mistakenly relied upon "an open-ended reasonableness test" when he initially voted to suspend Schoen. The only way to correct the Board's mistake was to reconsider its disciplinary decision based on the correct standard—§ 62.50(17)(a). Where a quasi-judicial agency reaches a decision based on a mistake of the law it is required to apply, the agency has the inherent authority to reconsider and reach a decision properly applying the applicable law.[13] *See Goldberg*, 115 Wis. 2d at 522 (permitting limited reconsideration

---

[13] Schoen contends that the Board exceeded its jurisdiction when it failed to produce a written decision within ten days of its December 3, 2012 oral decision. As we have discussed, the Board had the inherent authority to reconsider its December 3, 2012 decision. As such, the Board's final decision was not rendered until December 11, 2012. The Board did issue a written decision within ten days of its December 11, 2012 decision. Thus, the Board did not exceed its jurisdiction in this regard. We do not address this issue further.

ensures decisions are not based on mistake). That is precisely what occurred here.

## II. Procedural Due Process Was Not Violated.

■

¶ 23. Schoen argues that he was denied procedural due process because the Board "deprived him of both the right to make a full defense and meaningful appellate review" when it reconsidered its decision to suspend him. Schoen's counsel contends that he was not given notice of the Board's decision to reconvene on December 11, 2012. However, there is evidence that Schoen's counsel spoke with the Hearing Examiner and the City Attorney on December 10, 2012, and objected to the hearing. Moreover, Schoen's counsel was present at the December 11 hearing.

■

¶ 24. "Generally, the fundamental or essential requirement of procedural due process of law is notice and hearing, that is opportunity to be heard either before a court or the administrative agencies." *Mid-Plains Tel., Inc. v. PSC*, 56 Wis. 2d 780, 785–86, 202 N.W.2d 907 (1973). Here, pursuant to Board Rules and Wisconsin Statutes, Schoen had both notice and a hearing on the original charge and on the discipline recommended by the Police Chief. Schoen's counsel presented a defense to the charge—namely, that Schoen was trying to protect himself. Schoen's counsel objected to the Board's decision to reconvene and was present at the December 11, 2012 session. Any error in the notification process was thus *de minimis. See Union State Bank v. Galecki*, 142 Wis. 2d 118, 417 N.W.2d 60 (Ct. App. 1987) (competitor's allegation that Banking Review Board's procedure for ruling on appli-

cant's application for branch bank violated competitor's right to due process of law due to lack of notice and lack of opportunity to participate was rejected because the record reflected competitor's participation in the hearing); *Poncek v. Poncek*, 121 Wis. 2d 191, 358 N.W.2d 539 (Ct. App. 1984) (wife's failure to serve an order for husband's appearance was harmless error where the record reflected that husband had actual notice of the hearing).

¶ 25. The entire December 11, 2012 proceeding focused on a specific legal issue, namely, the proper legislative criteria for imposing a disciplinary sanction. *See* WIS. STAT. § 62.50(17)(a). Schoen's counsel has advanced numerous legal arguments before this court that essentially challenge the Board's power to correct its legal error. We are not told what additional legal arguments counsel would have made to the Board that have not been made here. We have explained why we conclude that the Board, acting here as a quasi-judicial body, had the inherent authority to correct its error of law. Consequently, we find Schoen's procedural due process rights were not violated based on the facts before us.

¶ 26. Were we to hold that this quasi-judicial body is powerless to correct its own error of law, the intent of the legislature that the Board apply certain specific standards when deciding what discipline to impose would be thwarted because of human error at the Board level. Schoen's reading of the statute would hold that where a legislative mandate is inadvertently ignored, there would be no way for a quasi-judicial body to correct its legal error except to request a *certiorari* review in which the agency itself explains to the court how the agency exceeded its own authority by applying the wrong law. We are not prepared to impose

such an unnecessary journey through the judicial system and a waste of judicial resources when the legislature did not specifically direct us to do so.

*By the Court.*—Order affirmed.