COURT OF APPEALS
DECISION
DATED AND FILED

**January 27, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2332**

Cir. Ct. No. 2022GN42

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE GUARDIANSHIP AND PROTECTIVE PLACEMENT OF J. E. A.:

OUTAGAMIE COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

PETITIONER-RESPONDENT,

GUARDIANS OF TOMORROW, INC.,

RESPONDENT,

V.

J. E. A.,

RESPONDENT,

RICHARD A. LAUER,

APPELLANT.

APPEAL from orders of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Richard Lauer, pro se, appeals from orders that denied three petitions Lauer filed seeking to terminate or modify the guardianship of the person and estate of Jane[1] or to remove Guardians of Tomorrow as Jane's corporate guardian. Lauer identifies eight issues on appeal. We reject most of his claims outright and conclude that others are subject to harmless error. We therefore affirm.

## BACKGROUND

¶2 On July 28, 2022 (following a hearing held three days earlier), the circuit court granted the petition of the Outagamie County Department of Health and Human Services (DHHS) to appoint Guardians of Tomorrow as the corporate guardian for Jane's person and estate pursuant to WIS. STAT. ch. 54. *See* WIS. STAT. § 54.10. That same day, the court also issued an order for protective placement under WIS. STAT. ch. 55 authorizing Guardians of Tomorrow to place Jane in a residential facility, with required annual *Watts* reviews. *See* WIS. STAT. § 55.12; *State ex rel. Watts v. Combined Cmty. Servs. Bd. of Milwaukee Cnty.*, 122 Wis. 2d 65, 362 N.W.2d 104 (1985). Jane's placement was confirmed at an

---

[1] Because this appeal arises out of a special proceeding in a confidential guardianship and special placement action, we will use pseudonyms to identify the ward and a family member who shares her last name. *See* WIS. STAT. § 54.75 (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

uncontested summary hearing held on her first annual *Watts* review on July 21, 2023.

¶3      On August 18, 2023, Lauer (asserting that he was acting on Jane's behalf as her "friend") filed: (1) a "Petition for Review of Incompetency Finding," pursuant to WIS. STAT. § 54.64, seeking to terminate the guardianship; (2) alternatively, a "Petition to Modify Guardianship," pursuant to § 54.64, seeking to restore Jane's ability to vote and other specified rights; and (3) a "Petition for Review of Conduct of Guardian," pursuant to WIS. STAT. § 54.68, seeking to either remove Guardians of Tomorrow as Jane's guardian or compel it to act in what Lauer viewed to be Jane's best interests.[2]  In a cover letter to the three petitions, Lauer asserted that he believed Jane would provide him with written permission for access to Jane's guardianship and protective placement records, and he moved to be added as a party to the guardianship and protective placement proceeding, as well as to be granted discovery access to the guardianship and protective placement file.

¶4      On September 19, 2023, Outagamie County Assistant Corporation Counsel Aaron Janssen, acting on behalf of the DHHS, sent the circuit court a letter objecting to the petitions.  Janssen questioned Lauer's standing; noted that the petitions were not supported by any new doctor's report; pointed out that WIS. STAT. §§ 54.75, 55.22, and 51.30 barred Lauer from obtaining access to any treatment records in Jane's confidential guardianship and protective placement file; and asked the court to deny and dismiss the petitions without a hearing.

---

[2] On July 31, 2024, Lauer filed a second "Petition for Review of Conduct of Guardian," which is the subject of companion Appeal No. 2024AP2179 that we also decided today.

Janssen also noted in the letter that there were no other matters currently pending in the guardianship case, but that Jane herself had the ability, during her annual *Watts* review or at any other time, to raise any of the issues raised by Lauer.

¶5      On September 21, 2023, the circuit court issued two Notice of Hearing documents, each stating that the "case" was "scheduled for: **Guardianship/prot place/conservator hrg – Adult**" on October 2, 2023, "Re: Protect Place w/Guard." Lauer was not included on the distribution list for either notice, and he was unable to view the notices through the court's electronic filing system because he was not a party to the underlying guardianship action. Additionally, neither notice explicitly specified that Lauer's petitions would be the subject of the hearing.

¶6      In a letter dated September 28, 2023, and stamped as filed the following day, Lauer responded to Janssen's arguments. Among other things, Lauer asserted that Jane had informed her previously appointed adversary counsel that she wanted Lauer to speak on her behalf and that Jane had requested, but had not received, an independent medical examination "prior to the first hearing." In the same letter, Lauer also asserted that the circuit court had not contacted him about his petitions but that he had learned a hearing was scheduled for October 2, 2023. Lauer now asserts in his brief that he received a "copy" of one of the hearing notices by mail on September 26, 2023, six days before the October 2 hearing, but he claims that he does not know who sent him the copy.

¶7      Regardless of how Lauer learned of the October 2 hearing, he attended it along with Jane, Jane's guardian ad litem (GAL), corporation counsel Janssen, the DHHS's case worker Anne Hoffman, Guardians of Tomorrow

employee Heidi Basford-Kerkhof (who served as Jane's primary case manager), and Jane's brother Walter.

¶8      Jane did not provide the circuit court with any written authorization for Lauer to act on her behalf, either before or after the petitions were filed, and she did not explicitly state at the October 2 hearing that she had asked Lauer to file the petitions.  Jane did state at the hearing, however, that "[t]he whole purpose of this whole thing is my request, very strongly, to please lift all my rules and regulations" so that she would not be "locked in" at the facility and could vote.[3] Jane's GAL also informed the court that Jane had told him prior to the *Watts* review hearing that she would like to have a different case manager from her corporate guardian, although she did not allege any actual misconduct by Basford-Kerkhof.  Jane did not renew her request for a new case manager at the October 2 hearing.

¶9      The circuit court denied Lauer's petitions to review Jane's incompetency determination and to modify the guardianship orders without taking any evidence on those petitions because less than 180 days had passed since the annual *Watts* review hearing and because Lauer acknowledged that he had no new doctor's report or any expert witness who would testify that Jane was now competent.  The court also denied Lauer's request for discovery of Jane's medical records because Lauer had provided no authority that would authorize granting him access to those confidential records without the consent of Jane's guardian. While on the record, the court scheduled an evidentiary hearing for October 4

---

[3] We take judicial notice that the order declaring Jane incompetent explicitly did *not* remove her right to vote.

and 5, 2023, on the remaining petition to review the guardian's conduct. Another hearing notice was issued that again failed to include Lauer on the distribution list and failed to specify that Lauer's remaining petition was the subject of the hearing.

¶10 At the start of the evidentiary hearing on the guardian's conduct, the circuit court denied Lauer's request to be joined as a party in the underlying guardianship and protective placement action, instead identifying Lauer's status as a petitioner seeking relief in the case. The court also found that Lauer had actual knowledge of the October 2 hearing and was given oral notice at the October 2 hearing of the evidentiary hearing scheduled for October 4 and 5.

¶11 Lauer then called Walter as a witness and questioned him extensively about a letter Walter had previously sent to the circuit court (which was not introduced or received into evidence) explaining the family's belief that Lauer was undermining Jane's care by feeding her delusions that she was not mentally ill, did not need medication or a guardian, and could live independently. As to Basford-Kerkhof's conduct as Jane's case manager, Walter testified repeatedly that he did not believe that Basford-Kerkhof had done anything wrong. Walter had not observed any sort of misconduct by Basford-Kerkhof firsthand, and he was not aware from any other source that Basford-Kerkhof had engaged in any conduct that would provide specified grounds for removal under WIS. STAT. § 54.68(2).

¶12 The circuit court continued the hearing to October 11, 2023. Prior to the continued hearing, Lauer sent the court a letter identifying himself, Basford-Kerkhof, Hoffman, and Jane as his remaining witnesses. Lauer stated that he would not be pursuing a claim that Basford-Kerkhof had failed to file required

inventories or reports and that he would limit his claims to allegations under WIS. STAT. § 54.68(2)(c), (cm), (g), and (j).

¶13 Jane's GAL and Basford-Kerkhof informed the circuit court that, the day before the continued hearing, Jane said that she did not want to participate in another hearing on the petition regarding her guardian's conduct; that she was not supportive of the proceeding; that she believed Guardians of Tomorrow was looking out for her best interests and was taking care of her; and that she did not want to have any further contact with Lauer.

¶14 At the October 11 hearing, the circuit court itself called Basford-Kerkhof and questioned her about the specific statutory grounds for removal identified in Lauer's guardian-conduct petition. Basford-Kerkhof testified that she: (1) had timely filed all required inventories and reports; (2) had no firsthand knowledge that any medical professionals had abused or neglected Jane at the nursing home where she resided; (3) had no firsthand knowledge that anyone from Guardians of Tomorrow or the nursing home had attempted to isolate Jane from her family members or had violated a court order under WIS. STAT. § 50.085(2) (authorizing visitation by a family member); (4) had received no complaints from the probate office, nursing home, or any family members that Guardians of Tomorrow had failed to provide adequately for Jane's personal needs from Jane's available assets; (5) had received no complaints from the probate office, nursing home, or any of Jane's family members that Guardians of Tomorrow failed to exercise due diligence and reasonable care to ensure that Jane's personal needs were being met in the least restrictive environment consistent with her needs and incapacities; and (6) had received no complaints from the probate office, nursing home, or any of Jane's family members that Guardians of Tomorrow failed to act in Jane's best interests.

¶15     Lauer then questioned Basford-Kerkhof about more specific instances of care. Basford-Kerkhof testified that nursing home staff provided Jane with medications, but she could not make Jane take them. After an incident in which Jane fell after refusing to take her medication, Basford-Kerkhof discussed with corporation counsel Janssen whether to seek an involuntary medication order for Jane. Basford-Kerkhof ultimately did not pursue an involuntary medication order because Jane resumed voluntarily taking her medications after the fall.

¶16     Basford-Kerkhof testified that she was aware that Jane had damaged hardware that was placed in her knee by trying to bend the knee postsurgery. In response, Basford-Kerkhof consulted with the nursing home's director of nursing and the orthopedic surgeon who had placed a spacer in Jane's knee to discuss the next steps. The surgeon provided two options: amputation of the leg or placement of a metal rod from Jane's hip to her ankle. Basford-Kerkhof supported Jane's decision to have the rod inserted.

¶17     Jane further injured herself by putting weight on the leg with the injured knee and shattering her ankle and then refusing to wear a boot to protect the ankle. In response, nursing home staff continued to encourage Jane to keep on the appliances for her knee and ankle.

¶18     Jane also started to pick at a scab on her knee, resulting in an open wound about six inches long, four inches wide, and four to six inches deep. The wound placed Jane at risk of a life-threatening infection or severed artery. Basford-Kerkhof reviewed pictures of the knee every week, and she consulted with medical professionals about applying antibiotics and wrapping the knee.

¶19     The circuit court took judicial notice of injuries to Jane's knee, which were already documented in the guardianship file, and it excluded six

additional photographs of the injuries that Lauer attempted to introduce on the ground that they were cumulative.

¶20 Following Basford-Kerkhof's testimony, Lauer rested his case without taking the stand himself or presenting testimony from Jane or from Hoffman. After hearing arguments on a directed verdict, the circuit court dismissed the petition and found it to be frivolous because it was unsupported by any good-faith basis. Lauer appeals.

¶21 In this appeal, Lauer contends that: (1) the hearing notices failed to comply with WIS. STAT. §§ 54.64(2) and 54.68(3), demonstrating the circuit court judge's bias and depriving Lauer of his due process right to an impartial tribunal; (2) the court improperly refused to issue a discovery order under § 54.68(3); (3) the court improperly denied the petitions for review of incompetency and modification of the guardianship at a "pre-hearing" and awarded attorney fees; (4) the court improperly acted as an advocate for Guardians of Tomorrow when it refused to allow Lauer to cross-examine Basford-Kerkhof with "picture evidence" and failed to address whether Guardians of Tomorrow needed to appear by counsel; (5) Jane was entitled to adversary counsel; (6) Lauer was entitled to view the entire record; (7) Lauer was required to be joined as a party to the underlying guardianship action; and (8) the DHHS lacked standing to oppose Lauer's petitions. We will set forth additional facts below as necessary in our discussion of each issue.

## DISCUSSION

### I. Due Process Claims Regarding Notice and Impartiality

¶22     We first address Lauer's claims that the circuit court failed to follow the hearing notice procedures set forth in WIS. STAT. § 54.64(2) (which applied to the petition for review of incompetency and the petition to modify guardianship) and WIS. STAT. § 54.68(3) (which applied to the petition for review of conduct of guardian), and that the alleged failure to follow those procedures demonstrated the judge's impartiality, in violation of Lauer's due process rights.  In the argument portion of his brief, Lauer combines the latter claim with additional allegations that the judge demonstrated bias toward him by calling and questioning Basford-Kerkhof; by refusing to adjust the time of a hearing to accommodate Lauer's work schedule, while adjusting the time of a hearing to accommodate Basford-Kerkhof's schedule; and by allowing corporation counsel and the GAL to respond to Lauer's impartiality claim.

¶23     WISCONSIN STAT. § 54.64(2)(a) provides that "any person acting on the ward's behalf … may petition for a review of incompetency, to have the guardian discharged and a new guardian appointed, or to have the guardianship limited and specific rights restored."  Such a petition may be filed "at any time after 180 days after any previous hearing under [WIS. STAT. §] 54.44, or at any time if the court determines that exigent circumstances, including the presentation of new evidence, require a review." *Id.*  The circuit court shall appoint a GAL, fix a time and place for a hearing, designate the persons entitled to notice and the manner of notice, and conduct a hearing at which the ward is present.  *Id.* WISCONSIN STAT. § 54.68(3) provides that the court shall hold a hearing on the petition between 10 and 60 days after the petition is filed and "shall order that the

petitioner provide notice of the hearing to the ward, the guardian, and any other persons as determined by the court."

¶24 Lauer contends that the circuit court failed to designate the persons who were entitled to notice of the hearing on the WIS. STAT. § 54.64 petitions or the manner in which the notice was to be given and that it should have given Lauer an opportunity to provide notice of the WIS. STAT. § 54.68 hearing rather than providing notice itself. However, the court's selection of people to be included on the distribution list of the hearing notices constituted a de facto designation of the persons who were entitled to notice of the hearing, and the initial mailing of the notices and subsequent oral pronouncements of hearing times constituted the court's decision as to the manner of notice.

¶25 Even assuming that Lauer should have been included on the distribution lists for the hearing notices, that the subject matter of the written hearing notices should have been more specific, or that the manner of service was otherwise flawed, we conclude that any such errors were harmless. *See Schoen v. Board of Fire & Police Comm'rs of Milwaukee*, 2015 WI App 95, ¶24, 366 Wis 2d 279, 873 N.W.2d 232 (stating that due process violations are subject to harmless error analysis). Under the harmless error rule, this court will not reverse a judgment "for error as to any matter of … procedure" unless "after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial." WIS. STAT. § 805.18(2).

¶26 Lauer asserts that the allegedly defective notice provided a "strategical advantage to certain parties and attorneys, including the GAL," but he does not identify what advantage having been notified of the hearing in a different

manner would provide. Lauer's additional contentions—i.e., that he did not know his petitions were the subject of the October 2 hearing and that it would have been "impossible" for the GAL and corporation counsel to have known the subject matter of the hearing "without coordination"—are disingenuous. Lauer's petitions were the only matters pending in the action at that time and therefore could reasonably have been inferred to be the subject of the hearing. If Lauer or any other participant had some question regarding the subject of the hearing, they could have contacted the clerk of court for clarification. In sum, Lauer's substantial rights were not adversely affected by any irregularity in service because he had actual notice of all of the hearings on his petitions, as did all of the people he stated that he intended to call as witnesses. *See Poncek v. Poncek*, 121 Wis. 2d 191, 192-93, 358 N.W.2d 539 (Ct. App. 1984) (holding that any due process violation arising from lack of notice of a hearing was harmless when litigant had actual notice of the hearing).

¶27     We turn next to Lauer's impartiality claims. In analyzing a claim of judicial bias, we begin with the presumption that "a judge is fair, impartial, and capable of ignoring any biasing influences." *State v. Gudgeon*, 2006 WI App 143, ¶20, 295 Wis. 2d 189, 720 N.W.2d 114. To overcome that presumption, a party must demonstrate the objective[4] existence of "actual bias" (i.e., that the judge in fact treated the party unfairly) or the "appearance of bias" (i.e., that there are circumstances present under which "a reasonable person—taking into consideration human psychological tendencies and weaknesses—[would conclude] that the average judge could not be trusted to 'hold the balance nice,

---

[4] Although a judge may also be subjectively biased, that is a determination that can be made only by the judge. *State v. McBride*, 187 Wis. 2d 409, 414-15, 523 N.W.2d 106 (Ct. App. 1994).

clear and true'"). *Id.*, ¶¶20-24. Opinions formed by a judge based upon facts introduced or events occurring during the course of a current or prior proceeding involving a party do not constitute the basis for a bias or partiality motion unless they display "a deep-seated favoritism or antagonism that would make fair judgment impossible." *State v. Rodriguez*, 2006 WI App 163, ¶36, 295 Wis. 2d 801, 722 N.W.2d 136 (citation omitted); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) (explaining that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion").

¶28    Here, Lauer has not identified a personal interest that the judge had in the outcome of the case or any other circumstances that would create an appearance of bias. We further conclude that the manner of notice, the circuit court's calling and questioning of Basford-Kerkhof, the court's responses to requests to adjust hearing times, and the court's request for input from the corporation counsel and the GAL regarding Lauer's impartiality claim do not demonstrate any actual bias, but were instead all decisions the judge was entitled to make in his discretion.

¶29    As noted above, we see no disadvantage to Lauer based upon the manner of notice provided for the hearings. Additionally, Lauer was the petitioner and therefore was already aware of the nature of his own allegations. The 45 days between the filing of the petitions and the first hearing provided more than adequate time for Lauer to prepare witnesses and arguments in response to the DHHS's objections to the petitions. Therefore, the timing of the notice also did not treat Lauer unfairly or display antagonism toward him.

¶30    Next, WIS. STAT. § 906.14 allows the circuit court to call and interrogate witnesses, and WIS. STAT. § 906.11 allows the court to exercise

reasonable control over the mode of interrogating witnesses, to avoid needless consumption of time and ensure an effective presentation of evidence. It was not unfair or antagonistic for the court to call and question Basford-Kerkhof when she was on Lauer's own witness list, and the court's questions related to the six grounds alleged in Lauer's petition. Furthermore, the court's conduct was a reaction to Lauer having spent nearly the entirety of the two prior hearings asking Walter questions that called for hearsay or irrelevant opinions outside of the issues before the court. The court's direct questioning of Basford-Kerkhof was a matter of judicial efficiency, not judicial bias.

¶31 We also see no unfairness or antagonism in the circuit court sua sponte delaying the start of a hearing while Basford-Kerkhof was escorting Jane to a medical appointment after having previously denied Lauer's request to change the scheduled time for a hearing in order to accommodate his work schedule. The court's decisions reflect the different roles Lauer, Basford-Kerkhof, and Jane had in the proceeding. As the court noted, it was Lauer's responsibility as the petitioner to move the matter forward.

¶32 Finally, it was entirely appropriate for the circuit court to elicit responses from the DHHS (which was a party to the action) and the GAL (who was an interested person by statute) before ruling on Lauer's impartiality motion.

## II. Discovery

¶33 The statute governing review of a guardian's conduct provides that the circuit court "may authorize use by the petitioner of any of the methods of discovery specified in [WIS. STAT.] ch. 804 in support of the petition to review conduct of the guardian." WIS. STAT. § 54.68(3). Lauer contends that the court violated this statute by not ruling on his discovery request for access to Jane's

14

guardianship records "with any clarity" until the end of the October 11 hearing. In Lauer's view, the court was required to make a decision on whether discovery was warranted either when providing notice of the hearing or in an otherwise "timely" manner.

¶34 We disagree with Lauer's characterization of when the circuit court made its decision on discovery, as well as when the statute required a decision to be made. We further conclude that the timing of the court's ruling is immaterial in this case because Lauer did not establish any right to discovery of Jane's guardianship and protective placement records.

¶35 Lauer never filed a separately captioned discovery demand. Instead, in the cover letter to his three petitions and in other subsequent letters, Lauer asked for access to Jane's files based upon two premises: (1) that Lauer believed Jane would provide him with written permission for access to Jane's guardianship and protective placement records; and (2) that Lauer became a party to the guardianship and protective placement action by filing his petitions.

¶36 At the October 2 hearing, Janssen pointed out that Jane lacked the capacity to release her records, because that power resided with the guardian of her person. The circuit court then determined, based upon the authorities cited by Janssen and the GAL (i.e., the statutes that make guardianship and protective placement proceedings confidential), that there was no basis to give Lauer access to Jane's medical records.

¶37 At the October 4 hearing, the circuit court explained multiple times that it recognized that Lauer's status as a petitioner entitled him to participate in the guardian conduct proceeding without giving him party status in the guardianship and protective placement proceedings. The court reaffirmed its

ruling that Lauer had no right to access to Jane's confidential records because he had "no familial, no formal, legal, interested person or party relationship" with her. Then, at the October 11 hearing, the court observed that it had already ruled on "who has access to the sensitive information of a ward."

¶38    In sum, because Jane's guardian never provided a release of Jane's confidential records to Lauer and because Lauer did not qualify as any person entitled to statutory access to those confidential records, the circuit court was well within its discretion to deny Lauer discovery of those records.

### III.  Dismissal of Petitions to Terminate or Modify the Guardianship

¶39    The circuit court dismissed Lauer's petitions to terminate or modify the terms of Jane's guardianship without taking evidence on them. The court relied upon the dual grounds that: (1) the petitions were filed less than 180 days after a *Watts* review hearing; and (2) Lauer acknowledged that he had no doctor's report or expert opinion concluding that Jane was now competent to make the decisions that had been transferred to a guardian.

¶40    As to the first ground, a petition to terminate or modify the terms of a guardianship may be filed "at any time after 180 days after any previous hearing under [WIS. STAT. §] 54.44 [to determine the need for guardianship], or at any time if the court determines that exigent circumstances, including the presentation of new evidence, require a review." WIS. STAT. § 54.64(2)(a). Lauer's "Petition for Review of Incompetency Finding" and "Petition to Modify Guardianship" were filed on August 18, 2023, which was 389 days after the guardianship hearing held pursuant to § 54.44 on July 25, 2022.

¶41    A *Watts* review under WIS. STAT. § 55.18 determines whether the standard for *protective placement* under WIS. STAT. § 55.08 continues to be met. While it may be true that if the criteria for guardianship are no longer satisfied, then the criteria for placement will also not be satisfied, the reverse is not automatically true.   In other words, it is possible for a person to require guardianship without placement in a facility.  Therefore, it is not clear that a *Watts* review for placement qualifies as a hearing to determine the need for guardianship under WIS. STAT. § 54.44.  We need not determine here whether there may be circumstances in which a *Watts* review would also qualify as a redetermination of the need for continued guardianship, however, because the circuit court's second ground for dismissal was independently valid.

¶42    In order to obtain a hearing, a litigant must allege material facts sufficient to warrant the relief sought.  ***State v. Allen***, 2004 WI 106, ¶¶9, 36, 274 Wis. 2d 568, 682 N.W.2d 433.  Here, Lauer did not allege that he had any expert testimony that would establish that Jane had regained competency, either overall or with respect to any provisions he wished to have amended.  Therefore, Lauer was not entitled to a hearing on his petitions to terminate or modify the guardianship order.

¶43    Lauer also challenges the order requiring him to pay the GAL's fees related to the dismissed petitions.   However, WIS. STAT. § 54.74 explicitly provides that "[i]f a petition to the court under this chapter is dismissed, the court shall order the petitioner to pay the compensation of the [GAL]."  Therefore, the court did not err in requiring Lauer to pay the GAL's fees.

17

## IV. Exclusion of Photographs

¶44   Lauer challenges the exclusion of his proffered photographs of Jane's knee.  He contends that the additional pictures he sought to introduce undermined the credibility of Basford-Kerkhof's testimony about how Jane injured her leg.  We see nothing in the excluded photographs, however, that is inconsistent with Basford-Kerkhof's account.

¶45   Moreover, as the circuit court noted, there were already pictures of Jane's knee in the closed file, and Basford-Kerkhof testified that she received pictures each week.  The photos were therefore cumulative, as the court stated. *See* WIS. STAT. § 904.03.   In addition, Lauer did not present any witness (including either Jane or himself) who could authenticate when the photographs were taken.  Accordingly, there was also a lack of foundation for the additional photographs.

## V.  Representation of Guardians of Tomorrow

¶46   Lauer complains that Guardians of Tomorrow failed to respond to the petition and was not represented by counsel at the hearings.  He cites ***Jadair Inc. v. United States Fire Insurance***, 209 Wis. 2d 187, 562 N.W.2d 401 (1997), for the proposition that corporations cannot appear as pro se parties and must be represented by counsel.

¶47   The ***Jadair*** rule does not apply here, however, because Guardians of Tomorrow was not a party to the legal action requiring representation.  The parties to the guardianship were the DHHS, as the petitioner, and Jane, as the respondent. Guardians of Tomorrow also did not violate the ***Jadair*** rule because it did not appear as a party in the matter by filing any pleadings, making any arguments to

the circuit court, or questioning any witnesses. Its participation was limited to having an employee—Bashford-Kerkhof—testify as a witness. Witnesses are not required to be represented.

## VI. Adversary Counsel for Jane

¶48 Lauer asserts that Jane requested legal representation "as early as June of 2023." The petitions in this matter were not filed until August 2023, however. Therefore, Jane's earlier request for adversary counsel could only relate to the *Watts* review. While Jane did write the circuit court a letter in January of 2024 (after these petitions had been decided) that appeared to conflate representation for the two matters, Jane told the court at the October 11 hearing that she was comfortable with the GAL representing her interests with regard to these petitions. If Lauer is suggesting that Jane requested adversary counsel for the purpose of her *Watts* review, that issue is outside the scope of this appeal.

## VII. Composition of the Record on Appeal

¶49 Lauer next contends that the record for this appeal from orders deciding special proceedings should include documents from the underlying guardianship and protective placement action. We have already rejected that argument by order dated April 16, 2024, and limited the record on appeal to the petitions that Lauer filed in the circuit court and any proceedings or documents arising out of those petitions. The appellate record already includes all relevant documents from the special proceeding, consistent with WIS. STAT. RULE 809.15(1)(a).

¶50 Lauer also asserts that the register in probate did not provide him with his full ten-day inspection period. The remedy for that alleged violation

would be by a motion to supplement or correct the record, which we have already addressed and denied.

## VIII. Joinder

¶51 Lauer contends that the circuit court should have joined him as a party to the guardianship and protective placement actions based upon his petitions for relief in those actions. The joinder statute applies when complete relief cannot be accorded among those who are already parties, or when the disposition of the action in the absence of a person may impair or impede the person's interest in the subject of the action. WIS. STAT. § 803.03(1). Neither situation applies here.

¶52 The circuit court had the authority to provide the relief requested in Lauer's petitions if Lauer had provided sufficient evidence to prove the petitions. We note that it was not necessary for Lauer to be a party entitled to review Jane's confidential files in order for Lauer to have testified himself or put Jane on the stand to prove the factual allegations made in the guardian conduct review petition. Lauer himself has no personal interest in the underlying guardianship and protective placement action.

## IX. The DHHS's standing

¶53 Finally, Lauer asserts that the DHHS lacked standing to oppose his petitions to terminate or modify Jane's guardianship or challenge the conduct of the guardian. The DHHS, however, was the party that petitioned to obtain the guardianship and to have Guardians of Tomorrow appointed as guardian in the first place. As a party to the guardianship and protective placement proceedings,

the DHHS plainly had standing in the special proceeding to defend the orders it had previously obtained.

        *By the Court.*—Orders affirmed.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.